No. 24-2508

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**SHARESSE MOHR**,
*Plaintiff-Appellant*,

v.

**WEATHERTECH, a/k/a MACNEIL AUTOMOTIVE
PRODUCTS LIMITED**,
*Defendant-Appellee.*

On Appeal from the
United States District Court for the Northern District of Illinois,
Case No. 1:17-cv-04451
The Honorable Martha M. Pacold

---

### REPLY BRIEF OF APPELLANT
### SHARESSE MOHR

---

Ruth A. Bahe-Jachna
*Counsel of Record*
Cheyenne S. Rivera
Kara E. Angeletti
Meredith R. Mandell
GREENBERG TRAURIG, LLP
77 W. Wacker Dr., Ste. 3100
Chicago, IL 60601
T: 312.456.8400
F: 312.456.8435
baher@gtlaw.com
cheyenne.rivera@gtlaw.com
angelettik@gtlaw.com
meredith.mandell@gtlaw.com

*Attorneys for Sharesse Mohr*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................1

    I.    WeatherTech's Response Brief Confirms that this Case Presents Numerous Factual Disputes that Preclude Summary Judgment. ......................................................................................1

    II.   WeatherTech's Response Brief Does Not Negate the District Court's Errors in Resolving Factual Disputes at Summary Judgment. ..................................................................................... 6

          A.   A Trier of Fact Should Resolve Whether Pretext Exists.... 6

          B.   A Trier of Fact Should Resolve Whether Similarly Situated Employees Were Treated More Favorably than Mohr. ................................................................................12

    III.  WeatherTech's Response Brief Does Not Negate the District Court's Errors in its Treatment of the Angjeli Report. ..............17

    IV.  The District Court Did Not Properly Apply the Ortiz Framework, and WeatherTech's Response Cannot Salvage this Failure. ................................................................................. 18

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Wisconsin Dept. of Health and Family Servs.*,
263 F.3d 673 (7th Cir. 2001) .................................................................. 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 ........................................................................................... 23

*Ash v. Tyson Foods, Inc.*,
546 U.S. 454 (2006) ................................................................................ 23

*Baker v. Macon Res., Inc.*,
750 F.3d 674 (7th Cir. 2014) .................................................................... 6

*Cameron v. Frances Slocum Bank & Tr. Co.*,
824 F.2d 570 (7th Cir. 1987) .................................................................... 5

*Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers, Loc.
Union No. 1*,
603 F.2d 7 (7th Cir. 1979) ...................................................................... 23

*Coleman v. Donahoe*,
667 F.3d 835 (7th Cir. 2012) .............................................................. 8, 12

*Corley v. Rosewood Care Ctr.*,
388 F.3d 990 (7th Cir. 2004) .................................................................... 1

*Craftwood II, Inc. v. Generac Power Sys., Inc.*,
63 F.4th 1121 (7th Cir. 2023) ................................................................... 5

*de Lima Silva v. Dep't of Corr.*,
917 F.3d 546 (7th Cir. 2019) .................................................................. 13

*Dunlevy v. Langfelder*,
52 F.4th 349 (7th Cir. 2022) .............................................................. 13, 16

*Eaton v. Ind. Dep't of Corr.*,
657 F.3d 551 (7th Cir. 2011) .............................................................. 17, 25

*Ezell v. Potter*,
400 F.3d 1041 (7th Cir. 2005) .......................................................... 13, 16

*Friedel v. Madison*,
832 F.2d 965 (7th Cir. 1987)..........................................................1

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U*,
789 F.3d 707 (7th Cir. 2015).........................................................1

*Gordon v. United Airlines, Inc.*,
246 F.3d 878 (7th Cir. 2001) ..................................................... 20

*Gustovich v. AT & T Communications, Inc.*,
972 F.2d 845 (7th Cir. 1992).........................................................10

*Hasham v. California State Bd. of Equalization*,
200 F.3d 1035 (7th Cir. 2000) .................................................... 23

*Hinterberger v. City of Indianapolis*,
966 F.3d 523 (7th Cir. 2020) .......................................................1

*Hobgood v. Illinois Gaming Bd.*,
731 F.3d 635 (7th Cir. 2013) ...................................................... 23

*Humphries v. CBOC W.*,
Inc., 474 F.3d 387 (7th  Cir. 2007), *aff'd*, 553 U.S. 442
(2008) ..........................................................................................13

*Joll v. Valparaiso Cmty. Sch.*,
953 F.3d 923 (7th Cir. 2020).........................................................18

*Jones v. Nat'l Council of Young Men's Christian Ass'ns of the
U.S.A.*,
48 F. Supp. 3d 1054 (N.D. Ill. 2014) .......................................16

*Kariotis v. Navistar Int'l Transp. Corp.*,
131 F.3d 672 (7th Cir. 1997)........................................................10

*Kellogg v. Ball State Univ.*,
984 F.3d 525 (7th Cir. 2021) .................................................... 6

*King v. Preferred Tech. Grp.*,
166 F.3d 887 (7th Cir. 1999)..................................................... 23

*Kinney v. St. Mary's Health, Inc.*,
    76 F. 4th 635 (7th Cir. 2023) ................................................................... 8

*Levy v. Wilkie*,
    841 F. App'x 987 (7th Cir. 2021).............................................................13

*Lunini v. Grayeb*,
    395 F.3d 761 (7th Cir. 2005)....................................................................17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .............................................................................8, 14

*Mohr v. WeatherTech*,
    No. 17-cv-04451, 2023 U.S. Dist. LEXIS 242830 (N.D. Ill.
    Mar. 2, 2023) ...................................................................................3, 4, 18

*Mohr. v. Weathertech*,
    No. 24-2508 (7th Circuit) ......................................................................... 2

*Moore v. CN Transp. Ltd.*,
    17-CV-6188, 2021 WL 111489 (N.D. Ill. Jan. 12, 2021)........................... 11

*Myszewski v. Wisconsin Aviation, Inc.*,
    No. 07-C-0487, 2010 WL 11527160 (E.D. Wis. Jan. 22, 2010) .............. 20

*Ortiz v. Werner Enterprises, Inc.*,
    834 F.3d 760 (7th Cir. 2016) ......................................... 18, 19, 21, 22, 25

*Rodgers v. White*,
    657 F.3d 511 (7th Cir. 2011) .....................................................................7

*Rudin v. Lincoln Land Cmty. Coll.*,
    420 F.3d 712 (7th Cir. 2005) .................................................................... 9

*Russell v. Acme-Evans Co.*,
    51 F.3d 64 (7th Cir. 1995) ........................................................................ 6

*Sarsha v. Sears Roebuck & Co.*,
    3 F.3d 1035 (7th Cir. 1993) ..................................................................9, 10

*Stokes v. Bd. of Educ. of the City of Chi.*,
    599 F.3d 617 (7th Cir. 2010) ................................................................. 4, 5

*United States v. Cornelius,*
   No. 3:21-CR-90 JD, 2023 WL 8252761 (N.D. Ind. Nov. 29,
   2023)........................................................................................ 23

*Waggoner v. Olin Corp.,*
   169 F.3d 481 (7th Cir. 1999) .................................................. 7, 8

*Wood v. Sec. Credit Servs., LLC,*
   126 F.4th 1303 ........................................................................... 4

*Zaccagnini v. Charles Levy Circulating Co.,*
   338 F.3d 672 (7th Cir. 2003)............................................... 6, 24

# ARGUMENT

## I. WeatherTech's Response Brief Confirms that this Case Presents Numerous Factual Disputes that Preclude Summary Judgment.

As an initial matter, WeatherTech's response brief repeatedly makes conclusory factual assertions, relies on conflicting evidence, and advances credibility determinations—further confirming that summary judgment was inappropriate in this case. *See Friedel v. Madison*, 832 F.2d 965, 969 (7th Cir. 1987) (appellate court may consider disputed facts in briefs).

*First*, WeatherTech makes numerous factual assertions without citing to or relying on supporting record citations. As this Court has "cautioned time and again, 'judges are not like pigs, hunting for truffles buried in the record.'" *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) (citation omitted; cleaned up). Consequently, a court "will not root through the hundreds of documents and thousands of pages that make up the record [] to make [a party's] case for him." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1001 (7th Cir. 2004). Relatedly, a party is required accurately to represent the record and cannot include misleading citations or misstatements of the record "added only to create the appearance of support." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528-29 (7th Cir. 2020).

Ignoring these well-established principles, WeatherTech seeks to force this Court to disregard the record, or otherwise sift through it to locate support for WeatherTech's statements, by making repeated unsupported factual assertions, including, for example:

- Mohr admitted that Strelczyk tried to accommodate Mohr's schedule. *See* Doc.[1] 26, Appellee WeatherTech's Br., at 2, 34 (no record cites) (Jan. 21, 2025);

- Heisler worked full shifts on days that he was tardy. *See* Doc. 3 (no record cite), 15-16 (misleading record cite),[2] 18-19 (misleading record cite),[3] 27 (no record cite);

- Mohr lied and/or embellished excuses for her absences. *See* Doc. 26 at 8 n. 3 (misleading record cite),[4] 26-27 (no record cite);

---

[1]    Citations to "Doc." refer to docket entries on ECF for this case, *Mohr. v. Weathertech*, Case No. 24-2508 (7th Cir.). Citations to "Dist. Doc." refer to refer to the docket number entry from the District Court, the materials of which make up the record on appeal and are included in the Second Appendix to Appellant's Brief, Doc. 19 (Nov. 27, 2024).

[2]    WeatherTech cites a page in the Angjeli Report for this assertion, but that page does not include this conclusion, and the Angjeli Report in general lacks any such factual basis or expert opinion that Heisler's work record was as WeatherTech now claims. *See* Doc. 26 at 15-16 (citing Mohr App'x at PDF page 151, Ex. O, Table 6). In any event, Mohr is unable to find support for the conclusion that WeatherTech made this argument in the District Court.

[3]    WeatherTech cites the District Court's oral ruling, but the District Court makes no mention of Heisler completing full shifts on days he was tardy. *See* Doc. 26 at 18-19 (citing court ruling from 59:12-60:4).

[4]    WeatherTech's citation does not include any evidence that Mohr intentionally or knowingly "embellished" her excuses and, in fact, includes no information about what Mohr actually knew at the time she contacted Strelczyk.

- Mohr's attendance and performance record was the "absolute worst overall." *See* Doc. 26 at 33 (no record cite).

- Strelczyk was "practically begging Ms. Mohr to show up for work[.]" *See* Doc. 26 at 35 (no record cite);

- Strelczyk sent "numerous text messages regarding no-show absences" to Mohr. *See* Doc. 26 at 25 (no record cite);[5]

- Twenty-four depositions were "necessary" to address Mohr's "allegations and the veracity of the myriad excuses she provided to Ms. Strelczyk for all of her no-show days." *See* Doc. 26 at 13 (no record cite, including no citations to support that Mohr lied about any excuse provided for a no-show day, relying instead on post-termination evidence);

- Claiming WeatherTech did not try to rebut the Angjeli Report or offer a competing analysis and that the Report was constructed "in an apparent effort to smooth out the spike of no-shows in Ms. Mohr's final month." *See* Doc. 26 at 14-16 (no record cite).[6]

---

[5]     Even giving WeatherTech the benefit of the doubt, the text messages contained in the record (which WeatherTech failed to cite) include only a single reference to a potential no-show, unexcused absence issue raised by Strelczyk to Mohr. *See* Doc. 19 at p. 39 of PDF (Dist. Doc. 196, Ex. B at 83 (MOHR000044)) (message dated April 10, 2016).

[6]     WeatherTech's statements in this regard are particularly egregious because the parties had competing expert reports that were the subject of competing *Daubert* motions before the District Court. *See Mohr v. WeatherTech*, No. 17-cv-04451, 2023 U.S. Dist. LEXIS 242830 (N.D. Ill. Mar. 2, 2023). The District Court denied WeatherTech's motion

Each of the above failures by WeatherTech goes to material fact disputes that strike at the heart of Mohr's claims. WeatherTech's inability to cite to evidence in the record further confirms that summary judgment was inappropriate.

*Second*, WeatherTech itself highlights factual disputes that should not have been resolved on summary judgment when it specifically identifies conflicting witness testimony between Mohr and other witnesses. *See* Doc. 26 at 13-14. A district court is not permitted "pick between" a record that "tells two different stories." *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1315 (reversing lower court, declining to choose sides for conflicting evidence) (citing *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)).

Finally, WeatherTech repeatedly makes improper credibility conclusions throughout its Response. For example, it goes to great lengths to paint Mohr in a negative light for matters that are entirely unrelated to WeatherTech's supposed basis for Mohr's termination. *See* Doc. 26 at 1 (using introduction to connect Mohr to alcohol poisoning and "multiple car

---

and held that Angjeli "is a qualified witness, her methodology is reliable . . ., and her testimony *will assist the trier of fact to understand the evidence or to determine a fact in issue*." *Id*. at *21 (emphasis added). The District Court further granted Mohr's request to exclude WeatherTech's "expert" because the witness was not qualified. *Id*. at *22-23 (declining to consider remaining arguments).

repossession"), 5 (criticizing Mohr's "proffered excuses"), 7-8 (same), 13 (criticizing Mohr's casino participation and eviction proceedings), 19 (criticizing Mohr's excuses), 26-27 (asserting Mohr's excuses were all lies, without citing record support for credibility assertion), 38 (criticizing Mohr's excuses).

To the extent these same credibility determinations were embedded in the District Court's ruling, they are also impermissible. "In deciding a motion for summary judgment, neither a district court nor [an appellate] court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence. The courts must view all the evidence in the record in the light reasonably most favorable to the non-moving parties." *Stokes*, 599 F.3d at 619. Thus, where there is a "possible inconsistency with respect to" a defendant's explanation (like WeatherTech's varying bases for Mohr's termination), that inconsistency "is certainly a matter for legitimate exploration" that would warrant reversal of summary judgment. *Cameron v. Frances Slocum Bank & Tr. Co.*, 824 F.2d 570, 575 (7th Cir. 1987). *See also Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023) (holding deposition testimony "certainly leave[s] room for a fact finder to assess the credibility of witnesses" and "likelihood" of what happened, noting

"credibility issues [are] for a jury" and that no assertions were "so implausible on their face that a reasonable jury could not find in [the non-moving party's] favor").

## II. WeatherTech's Response Brief Does Not Negate the District Court's Errors in Resolving Factual Disputes at Summary Judgment.

### A. A Trier of Fact Should Resolve Whether Pretext Exists.

WeatherTech continues to assert that Mohr was fired for seven unexcused absences in a thirty-day period. As an initial matter, it is imperative to reemphasize that WeatherTech only first committed to this narrative in its Motion for Summary Judgment. Prior to that filing, WeatherTech colored the record with various conflicting narratives for Mohr's firing. *See* Doc. 18, Appellant Sharesse Mohr's Br. at 12 (Nov. 27, 2024). Seventh Circuit case law is remarkably clear that a jury "may reasonably infer pretext from flagrant inaccuracies or inconsistencies in an employer's proffered reason for an employment decision." *Baker v. Macon Res., Inc.*, 750 F.3d 674, 677 (7th Cir. 2014); *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676-677 (7th Cir. 2003) (agreeing that secondary explanation for termination made in late stage of proceedings was "fishy") (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995)); *Kellogg v. Ball State Univ.*, 984 F.3d 525, 528-529 (7th Cir. 2021) (reversing summary judgment for defendant in part because of testimony by plaintiff

recounting her salary negotiations and the discriminatory motivations for lower salary). WeatherTech's repeated inconsistencies in its reason for firing Mohr create a genuine issue of material fact that must be resolved by a jury— not by an oral ruling from the bench on summary judgment.

In addition, there remains a material question of fact as to whether Mohr's lack of attendance failed a legitimate employment expectation. *Rodgers v. White*, 657 F.3d 511, 519-520 (7th Cir. 2011) (reversing summary judgment for defendant where material question of fact as to whether plaintiff's attendance was legitimate employment expectation or pretextual excuse for plaintiff's termination).

This is because there is evidence in the record that Strelczyk made an agreement with Mohr that tardiness and absences would be excusable so as long as Mohr gave her notice when feasible of the tardiness and absences, and made up her missing hours. And per this arrangement, Mohr did that, usually in the form of a text message notification, and then she would make up missed work hours at a later time.

WeatherTech cites *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999), for the proposition that general attendance is a requirement of any job. *See* Doc. 26 at 1, 31. While this may be true generally, here there is a question of fact that has been raised about her job requirements given that

Strelczyk regularly allowed tardiness and absences based on an agreement she had with Mohr. In addition, as the court noted in *Kinney v. St. Mary's Health, Inc.*, 76 F. 4th 635, 645 (7th Cir. 2023), *Waggoner* is now a 25-year-old case and "[d]etermining whether a specific job has essential functions that require in-person work has become much more of a case specific inquiry."

WeatherTech openly admits that WeatherTech also incorrectly claims that Mohr must show that pretext is tied to overt discrimination. But this is not the pretext standard under the *McDonnell-Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973) ("[I]t is abundantly clear that Title VII tolerates no racial discrimination, *subtle* or otherwise.") (emphasis added). Discrimination is not always, and in fact rarely is, overt. Thus, pretext can be shown through inferences of discrimination, like those present here.

For example, a jury could reasonably infer discrimination because WeatherTech took an adverse action against Mohr, an employee in a protected class—but not against Heisler, a similarly situated employee outside of that class. *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) ("[I]f an employer takes an action against one employee in a protected class but not another outside that class, one can infer

discrimination"). A jury could also reasonably infer discrimination from WeatherTech's manifest inconsistencies in its reasons for Mohr's dismissal. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005) ("[T]o survive a motion for summary judgment, an employee need only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for her dismissal.") (internal quotations omitted). Evidence of pretext is also reasonable given WeatherTech's inconsistently applied "lenient" tardiness and attendance policy,[7] Strelczyk requiring Mohr to consistently communicate with her, and Strelczyk failing to terminate other CSRs who did not abide by the company's attendance/tardiness policy. *Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993) ("When the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharge[e].") (reversing summary judgment where existence of uniform policy, the violation of which the employer relied on for the discharge, was factual dispute). Each of these reasons independently permits the fact finder to find in Mohr's favor and, when combined, further necessitate giving Mohr her day in court.

---

[7]     WeatherTech openly admits that Strelczyk did not uniformly apply the company's tardiness and attendance policy by acknowledging that she was "lenient" in its application. Doc. 26 at 28.

There is also clear evidence undermining the credibility of WeatherTech's claim that Mohr was fired for having seven unpaid absences in a thirty-day period. WeatherTech consistently gave formal high-performance marks to Mohr, as demonstrated in her Annual Performance Appraisals and counseling forms, See Doc. 19 at 115 ( Dist. Doc. 196, Ex. G at M00070-72); despite noting in its brief that Mohr's tardiness and attendance issues were a pattern throughout her employment. Doc. 26 at 15-16. This inherent contradiction brings WeatherTech's proffered reasons for Mohr's termination into serious doubt. Mohr was also never counseled by Strelczyk or WeatherTech that she was at risk of being fired due to issues with "no show" days. Doc. 19 at 28 (Dist. Doc. 195, ¶10). Even Strelczyk herself stated that her emotions motivated Mohr's dismissal. *See* Doc. 18 at 12. These facts cloud the record and WeatherTech's honesty in its proffered reason for firing Mohr. *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (quoting *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (noting that, when assessing pretext, courts ask "whether the employer's description of its reasons is honest").

This Court has made clear: "On summary judgment, a court can neither make a credibility determination nor choose between competing inferences. . . . Rather, these are functions for a jury." *Sarsha*, 3 F.3d at 1041

(internal citations collecting cases omitted). Accordingly, it is within the purview of the jury, not the District Court or WeatherTech, to resolve such contested factual matters. It is also neither for WeatherTech nor the District Court to decide whether Strelczyk's "skepticism was justified" to support Mohr's dismissal, *see* Doc. 26 at 26, when there exist disputed facts regarding Mohr's performance and WeatherTech's inconsistent narratives.

WeatherTech cites *Moore v. CN Transp. Ltd.*, 17-CV-6188, 2021 WL 111489 (N.D. Ill. Jan. 12, 2021), an unreported case from the Northern District of Illinois, as support for its conclusion that an employee's no-show workdays overcome any evidence of pretext and inferences of discrimination. This is an oversimplification of Seventh Circuit case law and discriminatory practices toward minority employees, no matter how subtle. In *Moore*, summary judgment was granted because the plaintiff failed to present evidence of a comparator, violated employment guidelines, and relied on hearsay to oppose summary judgment, among other things. *Moore* is distinguishable for multiple reasons.

*First*, as WeatherTech assured her in its reviews, Mohr met legitimate job expectations. *Second*, Mohr has presented evidence of a comparator who was treated differently under WeatherTech's inconsistent application of its

attendance policy. *Third*, Mohr was individually placed under a microscope within that inconsistent policy application, where others were not.

WeatherTech has consistently evaded a response to its inconsistent narratives for Mohr's firing and, instead, has offered this Court and the District Court only rote, robotic, and repetitious declarations of its *post hoc* fabrications. Inconsistent narratives for proffered reasons for dismissal and contested factual matters that cause doubt as to WeatherTech's credibility and honesty *must* be resolved by a jury.

### B. A Trier of Fact Should Resolve Whether Similarly Situated Employees Were Treated More Favorably than Mohr.

The District Court agreed with WeatherTech's argument that Heisler was not an appropriate comparator and, in doing so, ignored contrary Seventh Circuit precedent. WeatherTech's similarly situated comparator argument rests on a misplaced criteria that "[n]o-show absences are not the same as being late." Doc. 26 at 27. Notably, WeatherTech fails to acknowledge the clear legal precedent that states that comparators need only have engaged in "similar – *not identical* – conduct to qualify as similarly situated." *Coleman*, 667 F.3d at 847-51 ("Courts are looking for comparators, not clones."). WeatherTech further fails to properly interpret case law confirming that a reasonable factfinder could conclude that tardiness and

absences are comparable conduct, as this Court has found similarly situated comparators with less precise equivalence than the conduct at issue in this case. *See Dunlevy v. Langfelder*, 52 F.4th 349, 355 (7th Cir. 2022) (finding tardiness and absences are of comparable seriousness to meter curbing); *de Lima Silva v. Dep't of Corr*., 917 F.3d 546, 560 (7th Cir. 2019) (reversing summary judgment for employer and noting: "Whether plaintiff and Korte [the comparator] were charged with violating the same set of rules is not dispositive. Plaintiff may establish that his use of force was as serious as Korte's by showing their misconduct was of a similar nature."); *Humphries v. CBOC W*., Inc., 474 F.3d 387, 406-07 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) (reversing summary judgment where plaintiff was fired for leaving safe unlocked at night and comparator did so during the day and noting that despite defendant's argument, "this is a distinction without much difference"); *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005) (noting mail carrier accused of taking too long for lunch "raised a genuine issue of material fact as to whether" a carrier who had lost piece of certified mail was similarly situated); *Levy v. Wilkie*, 841 F. App'x, 987, 992-93 (7th Cir. 2021) (vacating summary judgment for employer when comparator broke same rule in an equivalent manner with slight differences in actions and that

whether they are "similarly situated" is a matter for the jury "even if their actions were not identical or committed at the same time of day").

Mohr does not need not show that "tardiness is comparable to absence in a no-show discharge context." Doc. 26 at 30. To do so would be to bypass the pretext element of the *McDonnell-Douglas* framework altogether and would require this Court to draw the question of similarly situated individuals too narrowly. Mohr does not concede (*see supra* at II.A), as WeatherTech incorrectly states (*see* Doc. 26 at 14), that she was fired due to her no-show absences in a thirty-day period.

To the contrary, Mohr has specifically highlighted the instances of WeatherTech proffering differing reasons for Mohr's termination—including a proffered reason of tardiness, *not* absences. *See* Doc. 18 at 9-12. With both Seventh Circuit precedent and the current record in mind, it is not only appropriate, but required, for tardiness and absence issues to be considered in the similarly situated employee analysis.

Finally, WeatherTech repeatedly asserts that "while Mr. Heisler was often late to work, he would show up and work a full shift." Doc. 26 at 3, 15, 19, 27, 30. But WeatherTech offers *no record support* for this "factual" conclusion. On the only occasion where WeatherTech provides a citation for this statement, it directs the Court to Angjeli's expert report, yet this citation

does not support the fact-based conclusion, and Angjeli certainly makes no such conclusion anywhere in her report. *See* Doc. 26 at 15 (citing Table 6 of Angjeli's expert report). This is just one example of WeatherTech's attempts to jettison the record in furtherance of obscuring the faults in the summary judgment ruling. As another example, WeatherTech characterizes Mohr's record as the "absolute worst overall" (Doc. 26 at 33), and yet, there is no definitive evidence in the record as to whether Heisler lost more revenue for the Company than Mohr as a result of his tardiness or whether his total hours in lost work was higher than Mohr's. That is because there was the possibility that the CSRs would make up their lost time by staying later, coming in earlier or coming in another day and the record is not clear on this point as the CSRs' timecards were not analyzed to this extent. Thus, WeatherTech's statement that Mohr had the "absolute worst record" is conclusory.

But in any event, whether Mohr or Heisler worked a full shift after arriving late makes no difference to the Court's comparator analysis. WeatherTech's factual assumptions and speculative statement that "Ms. Mohr would have been fired immediately" had WeatherTech actually applied its own policy do nothing more than distract the Court from the true comparator analysis.

Since the parties agree that Mohr and Heisler had the same supervisor and were subject to the same standards, the essence of the comparator analysis is for the Court to evaluate whether Mohr's and Heisler's conduct was of "comparable seriousness"; *i.e.*, did they engage in similar conduct. The evaluation is simple, especially given that WeatherTech acknowledges that Heisler, like Mohr, was "indeed frequently late to work" (Doc. 26 at 15). *See Dunlevy*, 52 F.4th at 354 (citing *Ezell*, 400 F.3d at 1050) ("If a comparator engaged in equivalent or more egregious conduct than the plaintiff but received a lighter punishment, or none at all, that satisfies the inquiry.").

Moreover, the focus here should be *not* on whether Mohr engaged in the alleged misconduct, but whether there was uneven discipline handed out. *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.A.*, 48 F. Supp. 3d 1054, 1135 (N.D. Ill. 2014) (". . . [T]he critical question here is not whether Ward actually engaged in the alleged misconduct, but whether Haynes received more lenient discipline for a comparable violation of the Y's rules and policies.").

For all of these reasons, Heisler is an adequate comparator, and this Court should reverse the District Court's judgment in favor of WeatherTech and allow this contested matter of fact to be decided by the jury.

### III. WeatherTech's Response Brief Does Not Negate the District Court's Errors in its Treatment of the Angjeli Report.

WeatherTech also provides no viable response to justify the District Court's error in holding that there was no other evidence of pretext to justify considering the Angjeli Report. In fact, WeatherTech makes no effort whatsoever to address the fact that the report represents a non-statistical analysis. *See* Doc. 26 at 31-33.

Instead, WeatherTech asserts that the District Court did consider the Angjeli Report. Doc. 26 at 32. To the extent the District Court contradicted itself and instead held that the report *should* be considered,[8] the District Court erroneously resolved a factual dispute regarding that report – whether the expert's opinions presented sufficient evidence of similarly situated employees who were treated more favorably than Mohr because "'whether individuals are similarly situated is a factual question for the jury.'" *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 558 (7th Cir. 2011) (reversing district court where it resolved similarly situated inquiry at summary judgment in light of conflicting evidence about similar actions) (quoting *Lunini v. Grayeb*, 395 F.3d 761, 770 n. 6 (7th Cir. 2005)). Thus, neither the District Court's

---

[8] This point of confusion highlights the uncertainty for the bases of the District Court's final ruling in light of the oral "judgment" that was not accompanied by any written order that pinpoints the District Court's justifications.

conclusion that the report did not analyze appropriate metrics,[9] nor WeatherTech's self-serving interpretation of the report, justified dismissing the report at the expense of the issue being resolved by the jury.

## IV. The District Court Did Not Properly Apply the Ortiz Framework, and WeatherTech's Response Cannot Salvage this Failure.

The trial court did not properly apply *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) in granting WeatherTech's motion for summary judgment.

*First*, in the hearing on WeatherTech's motion for summary judgment, the District Court concluded that Mohr's unpaid days off in the last thirty days is on its face a "legitimate basis" for Strelczyk to rely on for the termination. Ex. 1 at 53:17-25-54:1-3.[10] But under the *Ortiz* standard, one single piece of evidence should not be dispositive. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. *See also Joll v.*

---

[9]      Curiously, this conclusion likewise appears to contradict the District Court's earlier ruling that denied WeatherTech's motion to exclude the Angjeli Report, in which the District Court confirmed that Angjeli's opinions "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Mohr*, 2023 U.S. Dist. LEXIS 242830 at *21.

[10]      The transcript of proceedings on July 30, 2024 before Judge Pacold was attached to the Brief of Appellant Sharesse Mohr, Doc. 18 (Nov. 20, 2024), at p. 55 of PDF.  The transcript of proceedings is reattached herein as Exhibit 1 to this Reply for the Court's convenience.

*Valparaiso Cmty. Sch.*, 953 F.3d 923, 924 (7th Cir. 2020) (reversing summary judgment, noting "the district court appears to have erred by doing what we have repeatedly said a court should not: 'asking whether any particular piece of evidence proves the case by itself, rather than aggregating the evidence to find an overall likelihood of discrimination'") (citing *Ortiz*, 834 F.3d at 765).

In drawing the conclusion that seven absences in thirty days was, alone, a legitimate basis for the firing,[11] the District Court ignored other material evidence in the record that raises a triable issue of fact. Namely, the District Court failed to consider that Strelczyk had formed an agreement with Mohr that tardiness and absences would be excusable so as long as Mohr gave Strelczyk notice when feasible and otherwise made up for her lost time. Doc 19 at p. 4 of PDF (Dist. Doc. 196 (Plaintiff Sharesse Mohr's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and Plaintiff's Statement of Additional Material Facts)(Oct. 10, 2023), Doc 19 at p 35 of PDF (Ex. A at ¶¶ 4-5); Doc 19 at p. 100 of PDF (Dist. Doc. 196, Ex. C at 189:12-193:6). When Mohr would be tardy or absent, she would

---

[11]    Mohr asserted in her opposition to WeatherTech's motion for summary judgment that she was unable to attend six scheduled shifts in the thirty-day period prior to being fired by Strelczyk.  Doc. 19 at p. 4 of PDF (Dist. Doc. 196., Plaintiff Sharesse Mohr's Response to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and Plaintiff's Statement of Additional Material Facts,¶ 8).

contact Strelczyk, and the two would discuss how Mohr would make up her lost time. Doc 19 at p. 35 of PDF ( Dist. Doc. 196, Ex. A at ¶¶ 4-5); Doc. 19 at p. 100 of PDF (Dist. Doc. 196, Ex. C at 189:12-193:6). This arrangement was not unique to Mohr, who learned that other CSRs who worked under Strelczyk also had this flexibility to make up for lost time when they were tardy or absent. *See* Doc. 19 at p. 100 of PDF ( Dist. Doc. 196, Ex. A at ¶ 4). Thus, the District Court ignored the triable issue of fact as to whether Mohr was meeting legitimate expectations.

Further to this point, other courts have suggested when an employer allows an employee to deviate from their regular schedule, and the employee does just that, it raises a question about whether the proffered reasoning for a firing is the deviation. *See, e.g.*, *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886-87 (7th Cir. 2001) (lack of clarity that employee had deviated from permissible patterns of behavior for other employees raises triable issue of fact whether employee met job expectations); *Myszewski v. Wisconsin Aviation, Inc.*, No. 07-C-0487, 2010 WL 11527160, at *16 (E.D. Wis. Jan. 22, 2010) (employer allowed employees to alter their schedules and did not expect strict adherence to those schedules and thus, construing the evidence in plaintiff's favor, her attendance met employer's expectations at the time she was terminated). Here, the District Court should have considered

WeatherTech's tolerance of Mohr's tardiness and no-show days over an extended period of time, which was likewise permissible with other employees, as demonstrating a triable issue of fact over whether WeatherTech's reasons for firing Mohr were legitimate.

*Second*, WeatherTech's position that its narratives for terminating Mohr were perfectly consistent, *see* Doc. 26 at 46 should not be credited. The District Court ignored inconsistencies in WeatherTech's reasoning for terminating Mohr, which is another reason the trial court failed to properly consider and apply the *Ortiz* standard. Strelczyk never testified that Mohr's seven absences during her final thirty-day period of employment were the reason. *See* Doc 19 at p. 100 of PDF (Dist. Doc. 196, Ex. C); Doc 19 at p. 131 of PDF ( Dist. Doc. 196, Ex. L ¶ 3. 10). Strelczyk did not inform Mohr that her absences were contrary to WeatherTech's job expectations and did not give her an opportunity to improve. Doc 19 at p. 35 of PFD (Dist. Doc. 196, Ex. A ¶¶ 11,13). No evidence was produced in this case that Mohr was verbally reprimanded by Strelczyk, or anyone else, during her employment at WeatherTech particular to the issue of "no show" days, outside of the August 9, 2016 text from Strelczyk firing Mohr. Doc 19 at p. 131 of PDF (Dist. Doc. 196, Ex. L ¶ 4).  Further highlighting inconsistencies in the proffered reason for the firing is that Mohr's annual and mid-year performance appraisals did

not evidence a particularized concern with Mohr's unpaid days off, or "no show" days." Doc. 19 at 35 (Dist. Doc. 196, Ex. A ¶¶ 8, 11–12); Doc. 19 at 115 ( Dist. Doc. 196, Ex G, 2014 Annual Performance Appraisal, at M00074); Doc. 19 at 124 ( Dist. Doc. 196, Ex. J, 2015 Annual Performance Appraisal, at M00070); Doc. 19 at 128 ( Dist. Doc. 196, Ex. K, 2016 Mid-Year Appraisal, at M000403). These inconsistencies raise a triable issue of fact with respect to pretext. Moreover, in disregarding the inconsistencies in the record over Mohr's firing, the District Court did not properly apply the *Ortiz* standard.

*Third*, the District Court improperly applied the *Ortiz* standard in overstepping its role in making a judgment about how to weigh the evidence of the text messages between Strelczyk and Mohr. The trial court assumed that the text messages reflected Strelczyk "trying to be accommodating wherever possible," Doc. 19 at 100 (Dist. Doc., Ex. C at 57:4-12), and that she was "very understanding," Doc 19 at p. 100 of PDF (Dist. Doc., Ex. C at 6: 11-20). But the other way to read the text messages is that Strelczyk fabricated a set of false expectations and engaged in a bait-and-switch when she summarily terminated Mohr without warning– after a documented history of excusing tardiness and absences when Mohr provided an explanation.

Moreover, Strelczyk's deposition testimony reveals that on August 9, 2016, she believed that Mohr's reason for her absence "was a lie" and a

"calculated" story.[12] Doc 19 at p. 100 of DPF (Dist. Doc., Ex. C at 88:16–92:17). Thus, Strelczyk's words and actions do not necessarily reflect that she was "very understanding" or "trying to be accommodating wherever possible," and this evidence should have been evaluated by the trier of fact as to whether Strelczyk's motives for the firing were honest. "[Q]uestions of motive and intent are inappropriate for summary adjudication in discrimination cases." *See Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers, Loc. Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979). "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *King v. Preferred Tech. Grp.*, 166 F.3d 887, 894 (7th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249(1986)); *see also Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1047-1048 (7th Cir. 2000); *Hobgood v. Illinois Gaming Bd.,* 731 F.3d 635, 644 (7th Cir. 2013) ("[W]e must 'resist the temptation to act as jurors when

---

[12] It is possible that the trier of fact could find use of the words "calculated" and "liar" as racially motivated even if they may appear neutral on their face. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) ("Although it is true the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage"). Some courts have recognized the concept of a "dog whistle," as one expert explained it is the "use of coded language to convey a meaning to those intended to hear it without directly articulating that meaning." *United States v. Cornelius*, No. 3:21-CR-90 JD, 2023 WL 8252761, at *11 (N.D. Ind. Nov. 29, 2023).

considering summary judgment motions,' . . . and leave any questions involving the 'weighing of conflicting indications of motive and intent' for trial.") (citations omitted); *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681, 683 (7th Cir. 2001) (denying review of employment discrimination cases with "a heightened level of scrutiny," stating that "employment discrimination cases typically involve questions of intent and credibility, issues not appropriate for this court to decide on a review of a grant of summary judgment"). Whether Strelczyk's statements constituted "justifiable skepticism" of Mohr as WeatherTech suggests, Doc. 26 at 46, or reflects pretextual animus is something that a trier of fact should consider. WeatherTech asserts that the factual record is devoid of racial hostility or animus. But Mohr's case has proceeded under the indirect method proof, and under this analysis a plaintiff need not produce evidence of overt discrimination. See *Zaccagnini*, 338 F.3d at 680.

Likewise, WeatherTech's argument that the evidence reflects that Strelczyk was a "kind and caring supervisor" or that she was "practically begging Ms. Mohr to show up for work," Doc. 26 at 34-35, has no merit. Even if the District Court agreed with WeatherTech's theory, it was obligated to put the conflicting pieces of evidence in the record before the trier of fact. WeatherTech's suggestion that Strelczyk was kind and caring are

inappropriate credibility conclusions at the summary judgment stage and should be determined by a trier of fact – not the District Court.

*Fourth*, the District Court's conclusion that Mohr's situation is "distinguishable from the other CSRs, even the other CSRs who had attendance issues of one form or another, or timeliness, tardiness issues of one form or another," Ex. 1 at 59:7-11, because she was tardy more frequently than others in the last thirty days of her employment, also raises a question about the weight of the evidence. That is, whether Mohr's conduct was truly "worse" than other comparably situated employees. In the same vein, the District Court likewise rejects Heisler as an adequate comparator and suggests that there is no evidence that he had the type of attendance issues that Mohr did. Ex. 1 at 59:15-17. The District Court incorrectly failed to recognize that whether Heisler is a valid comparator is a triable issue of fact. *See Eaton*, 657 F.3d at 558. Under the *Ortiz* standard, the District Court's discounting of Mohr's comparator evidence was improper.

## CONCLUSION

For the reasons set forth above and in Mohr's opening brief, as well as for such other reasons as may appear to the Court or are raised at the oral argument of this matter, this Court should reverse the judgment of the District Court and remand this case.

RESPECTFULLY SUBMITTED on March 14, 2025.

By: */s/ Ruth A. Bahe-Jachna*
    *Counsel of Record*
Ruth A. Bahe-Jachna
Cheyenne S. Rivera
Kara E. Angeletti
Meredith R. Mandell
GREENBERG TRAURIG, LLP
77 W. Wacker Dr., Ste. 3100
Chicago, IL 60601
T: 312.456.8400
F: 312.456.8435
baher@gtlaw.com
cheyenne.rivera@gtlaw.com
angelettik@gtlaw.com
meredith.mandell@gtlaw.com
*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

I, Meredith R. Mandell, certify that:

1.     This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5,939 words.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), and Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14-point Georgia font, with footnotes in size 12-point Georgia font.


Dated: March 14, 2025                    Respectfully submitted,

                                         GREENBERG TRAURIG, LLP

                                         */s/ Meredith R. Mandell*
                                         Meredith R. Mandell

                                         *Attorney for Plaintiff-Appellant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a copy of the foregoing **Reply Brief of Appellant Sharesse Mohr** was served upon all parties to the above cause to each of the attorneys of record herein through the electronic filing system on March 14, 2025 by:

GREENBERG TRAURIG, LLP

*/s/ Meredith R. Mandell*
Meredith R. Mandell

*Attorney for Plaintiff-Appellant*

# EXHIBIT 1

1    And also, I mean, I mentioned this already, I

2    mentioned that we are looking -- whether I'm considering *Ortiz*

3    or *McDonnell Douglas*, whether I'm looking at the evidence

4    under either of those frameworks, I am also, you know,

12:06:38    5    remaining mindful of the fact that we're at the summary

6    judgment stage, and so, you know, the ultimate question is not

7    has -- you know, which way would I find if I were a juror.

8    That's not the issue.

9    It's is there enough evidence in the record that

12:07:00    10    would permit a reasonable juror to find for the non-moving

11    party, in this case, Mohr.

12    So whether I'm analyzing the evidence under the *Ortiz*

13    framework or *McDonnell Douglas*, I just want to be clear, I'm

14    looking at it through the summary judgment lens, which is

12:07:24    15    about whether there's a genuine issue of material fact, not

16    about, you know, who would I find for if I were a juror.

17    Okay.  So with all of that in mind, you know, we need

18    to analyze the record here.  I think it makes sense to start

19    with the *Ortiz* framework, which is just looking at the

12:07:56    20    evidence as a whole, and here -- so I am going to grant the

21    summary judgment motion, and that's because I don't see a

22    genuine issue of material fact that would allow a juror to

23    find for Mohr.

24    So one -- so the employer, WeatherTech, has given a

12:08:29    25    basis for the termination, which is that Mohr was absent for 7

1  out of 30 days in the -- you know, towards the end -- in the

2  last 30 days of her employment.  She was absent for 7 of

3  30 days.

4         We looked at the text messages, the contemporaneous

12:08:56  5  text messages between Ms. Strelczyk and -- who was Ms. Mohr's

6  supervisor, and Ms. Mohr, and so Strelczyk does cite that

7  reason, gives that reason directly in the contemporaneous text

8  messages, and that is -- that is a fundamental requirement of

9  employment is showing up to work, and having 7 unpaid days off

12:09:32  10  in the last 30 days is, on its face, a legitimate basis for

11  Strelczyk to rely on for the termination.

12         And I don't see, looking at the record as a whole,

13  enough evidence that would raise questions about the validity

14  of that explanation or that would cut in favor of an -- or

12:10:07  15  support an inference that discrimination was at play in that

16  decision by Ms. Strelczyk.

17         I take the point by Ms. Mohr that at times,

18  WeatherTech has cited, so, for example, in that Exhibit T that

19  counsel cited, that plaintiff's counsel cited, that Exhibit T

12:10:43  20  includes an explanation or a position statement by

21  WeatherTech's HR that cites attendance issues more broadly,

22  not just the 7 out of 30 days that occurred towards the end,

23  the very end of Ms. Mohr's employment.

24         And so that's true, that at times -- so in that one

12:11:15  25  instance at least, the HR department was citing additional

1    among the CSRs, and so it doesn't undermine the employer's

2    justification.  And I think WeatherTech is also making a fair

3    point that that report does not analyze whether any other

4    employee missed as much work within that short of a time frame

5    as Ms. Mohr, meaning the 7 out of 30 days.

6         So in that regard, Ms. Mohr, her situation is

7    distinguishable from the other CSRs, even the other CSRs who

8    also had attendance issues of one form or another, or

9    timeliness, tardiness issues of one form or another.  And,

10   again, that goes to just support the employer's legitimate

11   explanation.

12        The -- you know, on that same point, if we're

13   analyzing this under the *McDonnell Douglas* framework, I do not

14   see a -- there's not evidence of a comparator who was

15   similarly situated.  Mr. Heisler, there's no evidence that he

16   had the type of attendance issues that Ms. Mohr did, the

17   7-out-of-30-day absences.  And I understand that Ms. Mohr is

18   arguing that Mr. Heisler was significantly more tardy than she

19   was, so Ms. Mohr wants to compare Mr. Heisler with respect to

20   tardiness to Ms. Mohr, as opposed to the number of absences in

21   that short of a time frame.  But I think that the number of

22   absences is a very significant -- in that short a time frame

23   is actually a very significant situation or significant

24   distinction.

25        Again, it is very important that the employer be able